UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| **CHAMBERS OF**<br>**BRENDAN A. HURSON**<br>**UNITED STATES MAGISTRATE JUDGE** | **101 WEST LOMBARD STREET**<br>**BALTIMORE, MARYLAND 21201**<br>**(410) 962-0782**<br>**MDD_BAHChambers@mdd.uscourts.gov** |

January 10, 2023

LETTER TO ALL COUNSEL OF RECORD

Re:   *Andrew E. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration*
      Civil No. 22-1348-BAH

Dear Counsel:

On June 3, 2022, Plaintiff Andrew E. ("Plaintiff" or "Claimant") petitioned this Court to review the Social Security Administration's ("SSA's" or "Defendant's" or "Commissioner's") final decision to deny Plaintiff's claim for Disability Insurance Benefits. ECF 1. Before the Court are Plaintiff's Motion for Summary Judgment, ECF 8, Plaintiff's Memorandum in Support, ECF 8-1, Defendant's Motion for Summary Judgment, ECF 10, and Defendant's Memorandum in Support, ECF 10-1.[1] I have considered the record in this case and the parties' filings. ECFs 7, 8-1, 10-1, 11. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). This Court must uphold the decision of the SSA if it supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will GRANT Plaintiff's motion insofar as it seeks remand as a remedy, DENY Defendant's motion, REVERSE the Commissioner's decision, and REMAND the case to the Commissioner for further consideration. This letter explains why.

I.   **BACKGROUND**

Plaintiff filed a Title II application claim for a period of disability and disability insurance benefits ("DIB") on June 9, 2021, alleging a disability onset of September 8, 2020. Tr. 214. Plaintiff's claim was denied initially and on reconsideration. Tr. 100–03, 112–19. On December 16, 2021, an Administrative Law Judge ("ALJ") held a hearing. Tr. 13–31. Following the hearing, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. Tr. 18–39. The Appeals Council denied Plaintiff's request for review, Tr. 1–6, so the ALJ's decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

The ALJ employed the five-step sequential evaluation process to evaluate Plaintiff's

---

[1] The Court acknowledges Standing Order 2022-04, which amends the Court's procedures regarding Social Security appeals to comply with the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), which became effective December 1, 2022. Under the Standing Order, the nomenclature of parties' filings has changed to "briefs" from "motions for summary judgment." Because the motions in this case were filed prior to the effective date of the Standing Order, the Court will refer to them as motions for summary judgment.

*Andrew E. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration*
Civil No.: 22-1348-BAH
January 10, 2023
Page 2

claims. *See* 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff has not engaged "in substantial gainful activity during the period from his alleged onset date of September 8, 2020[,] through his date last insured of June 30, 2021." Tr. 18.

At step two, the ALJ found that Plaintiff suffered from the severe impairments of "post-concussion syndrome, traumatic brain injury, depressive disorder, and generalized anxiety disorder." Tr. 25. The ALJ also found that Plaintiff suffered from the non-severe impairments of "obesity, tinnitus, and headaches." Tr. 19.

The ALJ then found that Plaintiff's alleged impairments did not ["meet] or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." *Id.* Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can occasionally climb ramps and stairs, but cannot climb ladders, ropes, or scaffolds. He can occasionally stoop. The claimant should avoid concentrated exposure to extreme heat, vibration, hazardous machinery, unprotected heights, and avoid noises at loud or higher level per DOT/SCO. He is limited to work involving simple, routine, and repetitive tasks. The claimant cannot perform work requiring production rate or pace. He can have occasional interaction with supervisors, coworkers, and the public. The claimant can work in a low stress job, defined as only occasional decision making, changes in work setting, and judgment required on the job.

Tr. 21. The ALJ concluded that Plaintiff could not perform "past relevant work." Tr. 25.

The ALJ next determined that Plaintiff was a "younger individual on the alleged disability onset date" and "has at least a high school education. Tr. 26. The ALJ then concluded that Plaintiff "would be able to perform a wide range of work within the national economy" including "cleaner, laboratory equipment" (DOT[2] 381.687-022), "Cook Helper" (DOT 317.687-010), and "Laborer, stores" (DOT 922.687-058). Tr. 26. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Social Security Act, at any time from September 8, 2020, the alleged onset date, through June 30, 2021, the date last insured (20 CFR 404.1520(g))." Tr. 27.

---

[2] The "DOT" is shorthand for the Dictionary of Occupational Titles. The Fourth Circuit has explained that "[t]he *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

*Andrew E. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration*
Civil No.: 22-1348-BAH
January 10, 2023
Page 3

## II.     ANALYSIS

Plaintiff raises one argument on appeal, specifically that "the ALJ failed to define 'production rate or pace' work in his hypothetical to the VE," which resulted in an error at step five of the ALJ's analysis. ECF 8-1, at 6–11. Defendant concedes that "production rate or pace" is undefined but avers that there is no "categorical rule" requiring remand and argues that the ALJ's "decision overall provides adequate explanation of the phrase and allows for meaningful review by the Court." ECF 10-1, at 5. (citing *Thomas v. Berryhill*, 916 F.3d 307, 312 (4th Cir. 2019)). Defendant urges the Court to look "elsewhere in [the ALJ's] decision" to find additional information about the terms "production rate or pace" that would be sufficient to review, and uphold, the ALJ's decision. *Id.* at 5–6.

As noted, the scope of this Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

Plaintiff contends that the ALJ's failure to include a definition of the term "production rate or pace" when posing a hypothetical question to the VE conflicts with the Fourth Circuit's holding in *Thomas*. ECF 8-1, at 6. In *Thomas*, the Fourth Circuit ordered remand when "the ALJ stated that [the plaintiff] could not perform work 'requiring a production rate or demand pace,'" but failed to provide "enough information to understand what those terms mean." *Id.* at 312. Here, both sides agree that the ALJ failed to explicitly define the terms "production-rate" or "pace work" in the hypothetical posed to the VE. Tr. 50. These terms are almost interchangeable with the terminology utilized in *Thomas*. Thus, if the ALJ failed to provide additional information "about what those terms mean," it is "difficult, if not impossible, for [the Court] to assess whether their inclusion in [Plaintiff's] RFC is supported by substantial evidence." *Id.*

Defendant points the Court to *Sizemore v. Berryhill*, a case decided prior to *Thomas* where the Fourth Circuit found that an ALJ adequately explained a rate, production, and pace limitation to a claimant's RFC despite only finding that client can engage in "non-production jobs." 878 F.3d 72, 81 (4th Cir. 2017). As the Fourth Circuit explained in *Perry v. Berryhill,* the decision under review in *Sizemore* "provided additional context, explaining that the claimant could perform work only in a 'low stress' setting, without any 'fast-paced work' or 'public contact,' to account for moderate limitations in concentration, persistence and pace." 765 F. App'x 869, 872 n.1 (4th

Case 1:22-cv-01348-BAH   Document 12   Filed 01/10/23   Page 4 of 5

*Andrew E. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration*
Civil No.: 22-1348-BAH
January 10, 2023
Page 4

Cir. 2019) (citing *Sizemore*, 878 F.3d at 79–81).  Defendant argues that the ALJ's opinion here contains similar "surrounding text" that adequately defines "production-rate pace."  Specifically, Defendant avers that the inclusion of limitations requiring "only occasional interaction with supervisors, coworkers, and the public," as well as the further limitation that Plaintiff "can work in a low stress job, defined as only occasional decision making, changes in work setting, and judgment required on the job," Tr. 21, "lend sufficient context to discern what the ALJ meant when using the phrase 'cannot perform work requiring production rate or pace,'" ECF 10-1, at 9 (quoting Tr. 21).

While Defendant's argument has some appeal, it ignores that the RFC found insufficient in *Thomas* included almost identical language to what Defendant proposes as adequate here.  There, the ALJ found that the plaintiff could "follow short, simple instructions and perform routine tasks, but [could do] no work requiring a production rate or demand pace."  *Thomas*, 916 F.3d at 310.  The ALJ further limited the plaintiff in *Thomas* to "occasional public contact or interaction and frequent, but not continuous, contact or interaction with coworkers and supervisors" and noted that they "must avoid work involving crisis situations, complex decision making, or constant changes in a routine setting."  *Id.*  This RFC bears a strong resemblance to the one at issue here and thus a similar outcome to *Thomas* is required.[3]

Defendant also points to a footnote in *Kathline O. v. Comm'r, Soc. Sec. Admin.*, acknowledging the so-called "*Sizemore* carveout" and noting that an earlier decision of the ALJ in that case—a decision that was not under review but arguably resembled the one at issue here—"may have fit into" the *Sizemore* safe harbor.  No. SAG-18-3496, 2019 WL 4168961, at *3 n.1 (D. Md. Sept. 3, 2019); *see* ECF 10-1, at 10.  I do not deny that such a "*Sizemore* carveout" exists, but I cannot find that this record presents a scenario where it applies.

In fact, *Kathline O.* actually bolsters Plaintiff's argument.  Like Plaintiff, the *Kathline O.* claimant had a moderate limitation in "maintaining concentration, persistence, or pace."  2019 WL 4168961, at *2.  Accordingly, the ALJ limited her "to simple routine tasks, but not at a production rate pace with no more than an occasional change in the work setting and occasional interaction with supervisors, coworkers and the public."  *Id.* at *1.  Despite these additional descriptors, Judge Gallagher held that remand was required.  Like this in *Thomas*, the defective descriptors in *Kathline O.* resemble the ones present here.

Defendant also cites *Marcia S. v. Kijakazi*, where the inclusion of a limitation on "production rate or pace" sustained a claimant's challenge because additional text in the ALJ's decision provided an ample basis for judicial review.  No. BPG-21-679, 2022 WL 1714853, at *2 (D. Md. Mar. 1, 2022).  In *Marcia S.*, however, the additional text included a limitation mandating "no quota driven work."  *Id.* at *2.  Numerous courts, including this one, have held a limitation on "production rate or pace" combined with a prohibition on quotas provides enough detail for

---

[3] It must also be noted that a limitation addressing "occasional interaction with supervisors, coworkers, and the public," Tr. 21, "deals largely with workplace adaptation, rather than concentration, pace, or persistence," *Varga v. Colvin*, 794 F.3d 809, 815 (7th Cir. 2015).

Case 1:22-cv-01348-BAH   Document 12   Filed 01/10/23   Page 5 of 5

*Andrew E. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration*
Civil No.: 22-1348-BAH
January 10, 2023
Page 5

judicial review. *See, e.g.*, *April K. v. Kijakazi*, No. 21-1538-BAH, 2022 WL 2793048, at *5 (D. Md. July 15, 2022); *Shuronn S. v. Kijakazi*, No. TJS-20-3756, 2022 WL 391434, at *2 (D. Md. Feb. 9, 2022) (affirming ALJ's use of "fast pace or strict production quotas"); *Kenneth L. v. Kijakazi*, No. SAG-20-624, 2021 WL 4198408, at *2 (D. Md. Sept. 15, 2021) (affirming ALJ's use of "no strict production quotas"); *Jackie W. v. Comm'r, Soc. Sec. Admin.*, No. DLB-18-3883, 2019 WL 5960642, at *1 (D. Md. Nov. 13, 2019). Here, however, the ALJ did not include an additional limitation on quota-driven work in the hypothetical or the RFC. This omission is not without significance, since a short exchange at the hearing between Plaintiff's counsel and the VE reveals the possibility that the VE did not believe a limitation addressing production or pace necessarily eliminated quota driven work. Tr. 52.[4]

Defendant provides a helpful discussion of Plaintiff's health history and its relationship to the RFC. ECF 10-1, at 6–10. However, I am still left to guess at what is meant by a limitation on "production rate or pace" in the ALJ's decision and can only guess at whether the VE fully understood how those terms were defined when used in the hypothetical questions posed by the ALJ. Accordingly, I cannot find that the ALJ's decision is supported by substantial evidence, and remand is the appropriate disposition.

### III.  CONCLUSION

For the reasons set forth herein, Plaintiff's Motion for Summary Judgment, ECF 8, is GRANTED insofar as it seeks remand as remedy. Defendant's Motion for Summary Judgment, ECF 10, is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is **REVERSED** due to inadequate analysis. The case is **REMANDED** for further proceedings in accordance with this opinion.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Brendan A. Hurson
United States Magistrate Judge

---

[4] Specifically, the VE acknowledged that all three jobs identified as suitable for Plaintiff required Plaintiff to perform "repetitive tasks," which the VE defined as "doing the same thing over and over again." Tr. 52. Though Defendant is convinced that this description eliminates "production-related work," ECF 10-1, at 11–13, I am not as persuaded. For example, the assembly of a thousand salads for an awards banquet or the peeling of hundreds of potatoes for a restaurant's Thanksgiving feast—both tasks that might be performed by a "cook helper" under the DOT's definition—involve doing the "same thing over and over again" and are akin to assembly line work.